PITRE, DEMANDANTE Y APELANTE, *v.* ESTRELLA, DEMANDADA Y APELADA.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección Primera, en pleito sobre nulidad de documento.

No. 2489.—Resuelto en marzo 21, 1922.

COMPRAVENTA—DOBLE VENTA DE FINCA NO INSCRITA.—Probado que la venta por documento privado de una casa no inscrita fué anterior a la venta de la misma a persona distinta por escritura pública, y que la primer adquirente entró de buena fe en posesión de la finca antes del segundo traspaso, es necesario concluir que la propiedad pertenece a quien fué primero en la posesión, según dispone el artículo 1376 del Código Civil.

Los hechos están expresados en la opinión.
Abogado del apelante: *Sr. P. González.*
Abogado de la apelada: *Sr. J. Martínez Dávila.*

EL JUEZ PRESIDENTE SR. DEL TORO, emitió la opinión del tribunal.

Balbino Pitre demandó a Margarita Estrella solicitando

que se declarara nulo cierto documento por virtud del cual Pitre aparecía vendiendo a Margarita una casa y se condenara a Margarita a dejar a la libre disposición de Pitre la casa en cuestión.

En la demanda se alega que Pitre era dueño de la casa de que se trata y la vendió a Antonio Matos por escritura pública de 13 de junio de 1919, habiéndola adquirido nuevamente de Matos por compra hecha constar en escritura pública el 18 de enero de 1920. Que la casa está edificada en terrenos de la sociedad "Peña y Balbás" situados en Santurce, P. R., teniendo que pagar el propietario de la casa al dueño del terreno un canon mensual, y debiendo notificarle cualquier transferencia que realice de la propiedad. Que al notificar Pitre la transferencia que hizo a Matos por indicación de éste se pidió a "Peña y Balbás" que transmitiera el arriendo del suelo a favor de Margarita Estrella y por un error en vez de transmitir solamente el arriendo del suelo se consignó en el documento privado otorgado al efecto que Pitre vendía la casa a Margarita.

Contestó la demandada sosteniendo que se encontraba en posesión de la casa porque era suya, por habérsela transmitido Antonio Matos en pago de ciertos servicios.

Fué el pleito a juicio. Declaró el demandante. Sostuvo que nunca transmitió la propiedad de la casa a la demandada. Que el documento privado de 2 de julio de 1919 se otorgó por error. Que sólo pidió a Peña que traspasara el solar a nombre de la demandada. Que la casa la vendió a Matos. Que el motivo de traspasar el solar a Margarita se debió a que Matos vivía en Río Piedras y le era imposible venir a Santurce. Que entregó el documento a Margarita pero no conocía su contenido. Que el documento está firmado por su esposa, pero ésta no lo leyó. El testigo no sabe leer. Que Matos le vendió nuevamente la finca por escritura pública. Se refiere también el testigo a la entrega de treinta

dólares a la demandada por cuenta de Matos para que desocupara la casa.

Declaró Matos corroborando la declaración de Pitre. También testificó Peña, de la sociedad de "Balbás y Peña," que fué quien escribió el documento. Dijo que Matos al pedirle que el documento se extendiera a nombre de Margarita, se expresó así: "mi idea no es vender la casa a ella sino que esté a favor del que paga los solares y para que me cuide un hijo que tengo ahí," y que hizo saber a Pitre que era necesaria en el documento privado de venta a favor de Margarita la firma de la esposa de Pitre, leyendo a éste el documento. El testigo Lebrón del Departamento del Trabajo declaró con respecto a cierta queja dirigida al departamento por la demandada en relación con este asunto. Su declaración tiende a corroborar las declaraciones de Pitre y Matos en relación con la entrega a la demandada de la suma de treinta dólares para que desocupara la casa. Por último declaró la demandada así:

"Estando yo viviendo en Río Piedras con mis hijos dió a luz una señora y al dar a luz esa señora se formó un revolú en el matrimonio; al formarse ese revolú en el matrimonio dijo el padre que sacaran el niño de la casa; la señora llamó a una hija mía que si ella lo quería coger; ella vino donde mí y le dije que no que no me podía hacer cargo de ese niño porque éramos mujeres pobres y yo no me podía hacer cargo de cuidar ese niño y ella viviendo fuera menos podía hacerse cargo; entonces ella fué otra vez y entonces el esposo le dijo que lo cogiera unos días a ver en lo que paraban. Vino y dijo: Cójalo unos días a ver en lo que para el matrimonio y lo tuve nueve días y a los nueve días vino un señor y dijo que por qué aquel niño estaba fuera de los padres y le dije que no sabía el motivo, que me lo habían dado a cuidar unos días a ver en lo que paraba ese matrimonio, y dijo: 'Hoy mismo mande ese niño para su casa' y lo entregué y me olvidé del niño, y a los ocho o nueve días dijeron que el niño se había desaparecido y no se sabía si era muerto o vivo. Antonio Matos vino a casa y me dijo: 'Qué le pa-

rece, Margarita, el niño se ha desaparecido y no se sabe el rumbo que ha cogido; el pueblo dice que es muerto; usted quiere ir a esa casa a ver si usted puede hablar con ella y saber dónde está el niño? y le dije: No voy a esa casa porque yo voy a sufrir una decepción, y dijo: Margarita yo le suplico que vaya a saber el paradero de ese niño porque es un peligro y no se sabe si es vivo o muerto, y entonces fuí yo donde la señora y yo llegué y la saludé y cuando llegué se sorprendió y le dije que venía a saber el paradero del niño porque me dijeron que era muerto y quería saberlo, y ella vaciló un rato y luego dijo: No, Margarita, el niño no es muerto; lo di a un matrimonio de Caguas. Yo me fuí en seguida y él estaba en casa aguardándome y dijo: 'Margarita qué pasa? Ella dice que el niño no es muerto, que lo ha dado a un matrimonio de Caguas, y entonces dice: Margarita si nosotros conseguimos el niño, que no sea muerto, yo le ofrezco comprarle una casa en el pueblo o donde usted la quiera  *  *  *.'

"(Dte.) A.—¿Quién dijo eso?

"T.—Antonio Matos. Entonces le dije que no, que yo tenía muchos chiquitos y era pobre y no podía hacerme cargo de ese niño porque mi trabajo era mucho, y dijo: Margarita después que usted no tenga que pagar casa puede usted criar el niño, puede atenderlo, y yo salí unas cuantas veces y nunca encontré el niño, y un día venía para San Juan y dijo que cuando fuera de aquí para allá iba a coger un carro a ver si lo hallábamos, y yo le dije: Ir nosotros en carro no vamos a hacer nada; lo mejor es que yo me levante temprano y vaya por ahí a ver si lo hallo. Muy de mañana me levanté y estuve andando hasta las dos de la tarde, y un día iba con él y me hallé una señora y me dijo: Margarita tú por aquí?—Sí. No sabes de un niño que han traído por aquí? y dice: Yo no sé dónde está, y le dije: Me haces el favor de llevarme allá? y cogimos por la vía del ferrocarril para abajo y en una casita que hay por allí estaba un niño acostado; yo no lo conocí y dije: este no es el niño que hace unos días trajeron aquí? y dice: es ese mismo, me lo trajo fulano de tal  *  *  *.

"(Dte.) A.—Usted recogió el niño en esa ocasión?

"T.—Yo lo dejé allí y vine donde Antonio y le dije: Antonio el niño está en tal parte, y dijo: Margarita vamos para que me enseñe dónde está, y fuí y le enseñé y le dije: Ahora Antonio usted

sabe del niño; usted le puede dar la casa a quien quiera, y dijo que no, que él como su padre quería que yo le criara el niño. Entonces me dijo allí: Margarita yo le compro una casa, y el día que yo no pueda darle un pote de leche usted se lo da y el día que yo no tenga usted se lo da, y le dije: Antonio yo soy una infeliz y no puedo hacerme cargo del niño, y dijo: Yo le daré una casa y cuando llegue el día de darle una educación yo se la daré y el niño es suyo y mío. El compró la casa, me llevó la llave y los papeles de la casa a Río Piedras y me dió para que tomara el carro y viniera a la casa y me entregó la llave de la casa y dijo: Aquí tiene su casa y vaya a buscar el niño; él fué conmigo al campo a buscar el niño y desde que entró el niño a mi casa más nunca me dió una peseta para un pote de leche. Después como a los tres o cuatro meses trajo la madre del niño a casa  *  *  *.''

Terminada la prueba del demandante, declaró la demandada otra vez y dijo que el niño de Matos estaba aún en su poder y que ella lo vestía y alimentaba.

La prueba documental consistió en una copia de la escritura de 18 de enero de 1920 por virtud de la cual Matos aparece vendiendo a Pitre la casa de que se trata, y el documento privado de 2 de julio de 1919 según el cual Pitre vendió a Margarita la misma casa por la suma de setecientos cincuenta dólares.

La corte de distrito estimó que la prueba demostraba que la casa pertenecía a Margarita y dictó sentencia declarando la demanda sin lugar. Y contra esa sentencia interpuso Pitre el presente recurso de apelación.

Señaló el apelante la comisión de tres errores a saber: 1, el cometido al dejar de resolver la cuestión planteada sobre nulidad del documento; 2, al no declarar nulo el documento, y 3, al aplicar indebidamente el artículo 1376 del Código Civil.

Los tres errores pueden estudiarse conjuntamente. Todo depende de si debemos creer al demandante o a la deman-

dada. El conflicto fué resuelto por la corte sentenciadora en contra del demandante, con razón a nuestro juicio.

Siendo esto así, no importa que en el documento de 2 de 'julio de 1919 no se consignara toda la verdad de la transacción. Prescindiendo del documento, resulta claro que adquirida que hubo la propiedad de la casa, Matos convino con. Margarita en traspasársela en consideración al cuidado de un niño. Bajo tal contrato de palabra, Margarita aceptó el niño y tomó posesión de la casa como dueña de ella, y siguió y ha seguido en la posesión y cumpliendo debidamente lo pactado, esto es, hecha cargo de cuidar al niño que le entregara Matos.

Hubo, pues, consentimiento, objeto cierto y causa de la obligación establecida, y Matos no pudo volver por sí solo sobre lo pactado.

Introduce alguna duda la entrega de los treinta dólares. Pero la duda se desvanece cuando se penetra bien en el fondo del asunto y se estudia la condición de las personas que en él intervinieron. Parece que Matos por alguna circunstancia después de meses de celebrada la transacción, quiso desposeer a Margarita de lo que le había entregado y le dió por medio de Pitre cierta suma de dinero para que saliera de la casa. Margarita era una mujer sin instrucción. No se daba cuenta exacta de la extensión de su derecho. Acudió al Departamento del Trabajo en queja. No .sólo Matos, sino Pitre insistían en que no tenía derecho y a no ser porque fué a consultar un abogado, seguramente Matos y Pitre hubieran logrado al fin hacerla salir de su casa mediante el pago de la pequeña suma de treinta dólares o alguna otra semejante adicional.

Aún en el caso de que. Pitre hubiera adquirido con entera buena fe de Matos en 18 de enero de 1920, resulta probado que Matos vendió la casa antes a Margarita Estrella y ésta,

también con anterioridad al traspaso a Pitre, entró en posesión de ella.   El artículo 1376 del Código Civil no se aplicó, pues, erróneamente.   No se trata en este caso de títulos ·inscritos.

Creemos que la sentencia apelada es justa y se dictó de acuerdo con la ley y en tal virtud el recurso establecido contra ella debe ser declarado sin lugar y confirmada la sentencia.

*Confirmada la sentencia apelada.*

Jueces· concurrentes: Sres. Asociados Wolf, Aldrey y Hutchison.